**United States District Court**
**Eastern District of Michigan**
**Southern Division**

**THERESITA DIETRICH,**

       Plaintiff                                           CASE NO. 05-CV-72113
                                                                  The Hon. DENISE PAGE HOOD

v.

**RICHARD K. STEPHENS, individually,**
**and as incorporator of 718 Notre**
**Dame Mtg., LLC and 718 Notre**
**Dame, LLC.**

       **Defendant.**

_____/

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

**I.    INTRODUCTION**

In the negotiation and subsequent sale of a building, plaintiff, the trustee of a family trust, contracted with the managing member of a proposed limited liability company yet-to-be-formed. The purchase agreement for the sale listed one company as the purchaser and title-holder. A promissory note used to finance the sale listed a second company–albeit similarly named–as the holder of the debt.

Plaintiff now seeks to pierce the corporate veil of the undercapitalized limited liability companies. Plaintiff claims that limited liability companies were mere alter egos and instrumentalities of their sole member. This Court finds that while the Plaintiff was aware of the objective terms of the promissory note and purchase agreement but that the facts present in this case warrant ignoring the corporate structure to impose personal liability.

## II. JURISDICTION

This matter is before the court on diversity jurisdiction, 28 U.S.C. § 1332. Plaintiff Theresita Dietrich is a resident of Forteleza, Ceara, Brazil. Defendants Richard K. Stephens and 718 Notre Dame, LLC and 718 Notre Dame Mtg.,. LLC are all residents of Michigan. The amount in controversy is in excess of $75,000.

## III. PROCEDURAL HISTORY

On May 27, 2005, Plaintiff initiated the present action, alleging the following claims: Priority Interest in Real Property; Count I, Foreclose against Real Property; Count II, and Breach of Contract; Count III. On October 10, 2006, this Court entered an Order granting the Defendants' Cross-Motion for Summary Judgment, Denying Plaintiff's Motion for Summary Judgment and Amended Motion for Summary Judgment and Mooting Plaintiff's Motion for Leave to File Amended Complaint. The Court relied on the fact that Plaintiff had brought an action prior to the one presently before this Court in the Wayne County Circuit Court, Detroit, Michigan. The Wayne County Circuit Court dismissed that action with prejudice pursuant to a settlement agreement signed in November of 2004. In this Court's May 27, 2005 Order, it concluded that Plaintiff's claims were subject to dismissal based on the doctrine of *res judicata*.

On October 18, 2007, the Sixth Circuit Court of Appeals remanded the matter to this Court, concluding that this Court's determination that *res judicata* barred Plaintiff's claims was in error. The Sixth Circuit held that Plaintiff's Complaint related to Defendants' post-settlement breaches, or Defendant's refusal to make payments since June 25, 2005. Such alleged breaches were not in existence at the time the Wayne County Circuit Court action was dismissed. A bench trial was held on July 14, 2009 and July 15, 2009.

## IV. FACTUAL BACKGROUND

Edgar J. Dietrich, an attorney,[1] owned a commercial building ("Building") located at 718 Notre Dame, Grosse Ponte, Michigan.[2] In the hopes of selling the building, he had it appraised on March 3, 2004. The appraiser valued the building at anywhere from $840,000.00-940,000.00. Mr. Dietrich was a trustee of the Dietrich Family Irrevocable Trust ("Trust"). On May 1, 2004, Mr. Dietrich transferred ownership of the building to the Trust. As part of a later divorce proceeding, Theresita Dietrich, Mr. Dietrich's ex-wife, was assigned ownership of the Trust.

On May, 4, 2004, Mr. Dietrich, acting as a trustee of the Trust, bargained for the sale of the Building to Richard K. Stephens. Mr. Stephens was involved in the real estate and mortgage business. Mr. Dietrich testified that he believed that Mr. Stephens was a "rich man."

The parties negotiated the purchase of the Building and agreed on a purchase price of $840,000.00. Together, Mr. Dietrich and Mr. Stephens created a written Purchase Agreement. Both parties agree that they read and signed the document. Since ownership of the Building had previously been transferred to the Trust, the Purchase Agreement identified Mr. Dietrich as a trustee of the Trust. The Purchase Agreement also identified "Richard K. Stephens, as managing member of a limited liability entity to be formed. . . ."

As a down-payment for the purchase of the Building, Mr. Stephens issued the Dietrich Family Irrevocable Trust a check for $50,000.00. The check bore the name of "Manufacturers

---

[1] While Mr. Dietrich was an attorney at all times relevant to the instant action, testimony indicated that he is no longer a member of the bar.

[2] The land in the City of Gross Pointe, Wayne County, Michigan is described as "[l]ot 8, except the west 30 feet thereof, Damerow's Subdivision, according to the plat thereof as recorded in liber 24, page 99 of Plats, Wayne County Records."

Financial Corporation," Mr. Stephens' wholly-owned company. Mr. Stephens could not procure a larger down-payment, so the parties also executed a promissory note on May 4, 2004 (the "May 4 Promissory Note"). In the May 4 Promissory Note, Mr. Stephens, as managing member of a limited liability entity to be formed, promised to pay the Trust $118,000.00.[3] The Trust did not require a personal guarantee from Mr. Stephens. Also on May 4, 2004, Mr. Dietrich, acting through the Trust, issued Mr. Stephens, on behalf of a limited liability entity to be formed, a receipt for $168,000.00–the $50,000.00 down-payment and the $118,000.00 promissory note.

During the negotiation, the parties agreed that the remainder of the $840,000.00 purchase price would be secured through a mortgage. Mr. Stephens, acting through the yet-to-be-formed 718 Notre Dame, LLC, could not secure a mortgage for the remaining $722,000.00 of the purchase price. Instead, Mr. Stephens' company only received a mortgage for $575,000.00.

In an effort to help ensure and finish the deal, Mr. Dietrich offered to finance the remainder of the purchase price beyond the $575,000.00 mortgage. On June 4, 2004, Mr. Stephens, acting as the managing member 718 Notre Dame Mtg., LCC–a different company than 718 Notre Dame, LLC–agreed to sign a second, promissory note (the "June 4 Promissory Note").

718 Notre Dame, LLC was the original signatory to the Purchase Agreement ("Title Holding Company"). By the terms of the Purchase Agreement, 718 Notre Dame, LLC was to hold title to the Building. The second company, 718 Notre Dame Mtg., LLC, was the signatory to the June 4

---

[3] The terms of the May 4 Promissory Note required Mr. Stephens, as managing member of a limited liability entity to be formed, to pay one-hundred and eighteen thousand dollars ($118,000) with an interest rate of six percent (6%) per annum, payable in sixty (60) interest-only payments, with the balance due on June 1, 2009. The amount of the promissory note would be reduced to fifty-three thousand dollars ($53,000) upon closing of the sale.

4

Promissory Note.[4]  The Trust did not require a personal guarantee from Mr. Stephens to ensure repayment of the loan.

By the terms of the June 4 Promissory note, Mr. 718 Notre Dame, Mtg., LLC, signed by Mr. Stephens as managing member of the company, was to repay the remaining $265,000.00 of the $840,000.00 purchase price not covered by the $575,000.00 mortgage.

After agreeing to the principal terms and securing financing, Mr. Stephens filed the paperwork to form both 718 Notre Dame, LLC and 718 Notre Dame Mtg., LLC (the company to incur the debt imposed by the June 4 Promissory Note).  Mr. Stephens is the sole member of both limited liability companies.  He manages the day-to-day affairs of both companies.  During trial, Mr. Stephens testified that the purpose of the 718 Notre Dame, Mtg., LLC was to repay the June 4 Promissory Note.

Since 718 Notre Dame Mtg., LLC was to hold the debt of the promissory note and 718 Notre Dame, LLC was to hold the title to the Building, 718 Notre Dame Mtg., LLC loaned the $265,000.00 to 718 Notre Dame, LLC.  No documentation or other corporate formality exists to evidence such a loan between 718 Notre Dame, Mtg., LLC and 718 Notre Dame, LLC.  In the instant action, the Trust holds the debt owed from the 718 Notre Dame, Mtg., LLC to the 718 Notre Dame, LLC.

The sale of the Building closed on July 26, 2004, about two months after the signing of the Purchase Agreement.  At the closing, the existing $336,581.41 mortgage on the Building was paid off using the $575,000.00 provided by the mortgage.  The remainder of the money was disbursed

---

[4] During this time, the paperwork to form 718 Notre Dame, LLC and 718 Notre Dame, Mtg., LLC, had yet to be filed.

as necessary and ownership was transferred to 718 Notre Dame, LLC. Only four days after the closing date, Mr. Dietrich, acting through the Trust, issued a notice of acceleration and intent to foreclose on the assets of the 718 Notre Dame, LLC–secured by the Building. The Trust never followed through with the foreclosure.

Initially, Mr. Stephens, acting in his capacity as managing member of 718 Notre Dame, Mtg., LLC made the interest-only required payments under the promissory note. The parties do not dispute that the loan default terms of the June 4 Promissory Note have been triggered. In other words, 718 Notre Dame Mtg., LLC is in default of the loan in the amount of $200,000.00.

At issue before the Court is whether Mr. Stephens should be held personally liable for the debts incurred by the LLCs. Plaintiff claims that the corporate veil should be pierced because the two limited liability companies that Mr. Stephens created were mere instrumentalities used by Mr. Stephens to shield himself from personal liability. Plaintiff further claims that the corporate veil should be pierced because Mr. Stephens "made no effort to capitalize" the limited liability companies and because Mr. Stephens treated the limited liability companies as an alter ego.

Before this Court is the ultimate question of whether Mr. Stephens can be held personally liable for debts incurred by two limited liability companies of which he is the sole member. Since the two entities were not yet in existence when the debts were incurred, the threshold question is whether one entity can contract with an entity yet to be formed. Specifically, whether the Dietrich Trust is able to enter into a legally-binding agreement with the yet-to-be-formed 718 Notre Dame, LLC and 718 Notre Dame Mtg., LLC.

**IV.     CONTRACTING WITH AN ENTITY-TO-BE-FORMED**

There are three basic kinds of cases where the personal liability of a principal of an entity to be formed will come into question. First, when a principal enters into a contract in the corporate name when that corporation actually does not exist. In these cases, the principal is generally personally liable because that company's non-existence does not trigger an agency relationship. In other words, an individual can act as an agent only if there is a principal.

Second are contracts entered in the corporate name, but where the other party does not know that the entity is yet-to-be formed. Generally speaking, in these cases the principal is also personally liable unless the corporation is thereafter formed and adopts the contract as a sort of novation.

This case falls in the third category, contracts that were entered in the corporate name where the other party actually does know that the entity is yet-to-be formed. In other words, there is no dispute that both Mr. Stephens and Edgar J. Dietrich both knew that the entities they referred to were still not actually in existence.

It is more-than-likely that the parties intended for someone to be liable should litigation arise. The question of who the parties intended to be liable becomes a question of Michigan contract law. The primary goal of any interpretation of a contract is to determine and ascertain the intent of the parties. *Grand Traverse Band of Ottawa and Chippewa Indians v. U.S. Attorney For Western Dist. of Michigan*, 198 F. Supp. 2d 920 (W.D. Mich. 2002)(aff'd, 369 F.3d 960, (6th Cir. 2004) (applying Michigan law)).

Intent is ascertained at the time the agreement was made. *Midwest Mobile Diagnostic Imaging, L.L.C. v. Dynamics Corp. of America*, 965 F. Supp. 1003, (aff'd, 165 F.3d 27 (6th Cir. 1998)). When language in a contract is clear and unambiguous, a court's interpretation of a contract is limited to the actual words used in the contract and parol evidence is not admissible to show that

7

the parties had a different intent. *See Burkhardt v. Bailey*, 260 Mich. App. 636 (2004). Changes in circumstances, or any other events that occurred after the formation of a contract are not controlling factors in determining intent. *See Nelson v. Big Rapids Gas Co.*, 299 Mich. 284 (1941). In other words, intent exists only at the time the contract was made.

In Michigan, as it was at common law, subjective attitudes toward the contract are irrelevant. *See, e.g.*, *Burkhardt v. Bailey*, 260 Mich. App. 636 (2004). Instead, the law presumes that parties understand the importance of the written instrument and, accordingly, courts should default to the intent manifested by the terms. See, e.g., *Zurich Ins. Co. v. CCR & Co.*, 226 Mich. App. 599 (1997).

A contract will be interpreted under the terms that the promisee knew or that the promisee had reason to know that the promisor understood. *Redinger v. Standard Oil Co.*, 6 Mich. App. 74 (1967). Further, the unilateral, subjective intent of a single party is not enough to control the terms of a contract. *Prentis Family Foundation v. Barbara Ann Karmanos Cancer Institute*, 266 Mich. App. 39 (2005).

In this case, Mr. Dietrich's belief–subjective intent–that Mr. Stephens was a "rich" man and Stephens' willingness to extend his company credit do not control the terms of the promissory note. Instead, the plain, unambiguous terms of the promissory note govern. Mr. Dietrich was a lawyer at the time the note was drafted and knew or should have known that contracting with a limited liability company–even one that is yet to be formed–would not allow him to reach Mr. Stephens' personal assets. The very fact that Mr. Dietrich helped draft the documents of this very complicated transaction goes to show that Mr. Dietrich indeed knew or should have known about the consequences of limited liability without personal guarantees. Michigan's Limited Liability Company Act generally does not allow for personal liability unless "otherwise provided by law or

in an operating agreement. . . ." Mich. Comp. L. § 450.4501(3).

Accordingly, this Court finds that the written intent of the parties was only to hold the limited liability companies liable, not Mr. Stephens personally.

Although it was the intent of the parties to only hold the limited liability companies liable, it does not necessarily follow that the corporate veil may not be pierced so as to reach Mr. Stephens's personal assets.

## V.   PIERCING THE CORPORATE VEIL

A presumption exists that "a corporation is a separate entity from its shareholders." *Laborers' Pension Trust Fund v. Weinberger Homes, Inc.*, 872 F. 2d 702, 704 (6th Cir. 1988). "This presumption, often called the 'corporate veil,' may be pierced only where an otherwise separate corporate existence has been used to 'subvert justice or cause a result that is contrary to some overriding public policy.'" *Servo Kinetics, Inc., v. Tokyo Precision Instruments Co.*, 475 F. 3d 783, 798 (6th Cir. 2007). The corporate veil may not be pierced unless "(1) the corporate entity was a mere instrumentality of another entity or individual; (2) the corporate entity was used to commit a fraud or wrong; (3) the plaintiff suffered an unjust loss." *Id.* To determine whether the corporate veil should be pierced, the court must keep in mind that "each case is *sui generies* and must be decided in accordance with its own underlying facts." *Herman v. Mobile Homes Corp.*, 317 Mich. 233, 26 N.W. 2d 757, 761 (Mich. 1947).

The factors to be considered include: (1) undercapitalization of the corporation, (2) the maintenance of separate books, (3) the separation of corporate and individual finances, (4) the use of the corporation to support fraud or illegality, (4) the honoring of corporate formalities, (5) whether the corporation is a sham, *see Laborers' Pension Trust Fund*, 872 F. 2d at 704-05, (6)

operation of the corporation as a mere facade for the personal operations of a stockholder, and (7) commingling personal and corporate funds. *Scarff Bros., Inc. v. Bischer Farms, Inc.* 546 F.Supp.2d 473, 494 (E.D.Mich. 2008) (citing *United States v. Walton*, 909 F.2d 915, 928 (6th Cir.1990)). Patent, large-scale abuse of the corporate form is most likely the trigger for piercing the corporate veil in Michigan. *Acton Plumbing & Heating Co. v. Jared Builders, Inc.*, 368 Mich. 626 (1962).

After review of the underlying facts in this matter, the Court concludes that the corporate veil should be pierced and Mr. Stephens shall be personally liable on the June 4, 2004 Promissory Note.

In this case, there is an absence of corporate formalities between 718 Notre Dame, LLC and 718 Notre Dame Mtg., LLC. 718 Notre Dame, LLC was set up as the title-holder of the Building. 718 Notre Dame Mtg., LLC was setup as the company to hold the liability for the promissory note signed on June 4, 2004. But in order to finalize the sale of the Building, 718 Notre Dame, LLC never signed a promissory note or otherwise borrowed the money from 718 Notre Dame Mtg., LLC. In *Simon v. Brentwood Tavern, LLC (In re Brentwood Golf Club, LLC)*, 329 B.R. 802 (Bankr. E.D. Mich. 2005), the court concluded that the two limited liability companies were alter egos under Michigan law and because Tavern (the non-Debtor) was the alter ego of Debtor, the court pierced the corporate veil. *Id.* at 809-11. In so concluding, the court relied, in part, on the following: Loan proceeds were used by Debtor to acquire certain assets to be used by Tavern, however "Tavern [was] unable to produce any documents evidencing the transfer of the [assets] to Tavern from the Debtor. . ." *Id.* at 809. Additionally, the court relied on the fact that the two entities had the same manager whose duties on behalf of the entities were nearly identical. *Id.* Here, Mr. Stephens admitted that there is no paperwork documenting the money 718 Notre Dame Mtg, LLC loaned to 718 Notre

Dame, LLC for the purchase of the Building. Mr. Stephens also testified that he was on both sides of any transactions between 718 Notre Dame Mtg, LLC and 718 Notre Dame, LLC.

There was testimony in this case that Mr. Stephens deposited his personal moneys in the corporate accounts so that 718 Notre Dame Mtg., LLC could make the payments on the promissory note. In *Acton*, the Michigan Supreme Court pierced the corporate veil because "funds were intermingled; payments were made to materialmen and suppliers without regard to the corporation which was actually obligated to perform the function; advances and loans were made to the individuals by the corporations without corporate authority and to suit the purpose of the individual defendants; new corporations were organized without payment of capital by the individuals who claimed to be stockholders." 368 Mich. at 628.

Here, 718 Notre Dame Mtg., LLC was formed solely to be responsible for a debt; 718 Notre Dame, LLC provided no consideration for the loan; 718 Notre Dame Mtg, LLC was organized without capitalization, Mr. Stephens would deposit his own funds into its bank account to make payments on the promissory note; there were no records or books, and Mr. Stephens is the sole member and manager of both entities. In *New Era Enterprises, Inc. v. Kacos,* no. 03-cv-873, 2006 U.S. Dist. LEXIS 24370, *13 (W.D. Mich. March 24, 2006) (citing *Seasworld v. Hiliti, Inc*., 449 Mich. 542; 537 N.W. 2d 221, 224 (Mich. 1995), the district court found that Trade Partners Gateway was a mere instrumentality of Trade Partners, relying on the fact that the property at issue was held by Trade Partners Gateway but was purchased by Trade Partners without Trade Partners Gateway keeping any records of the transaction. *Id*. at * 14-15; *see also Simon v. Brentwood Tavern, LLC (In re Brentwood Golf Club, LLC)*, 329 B.R. 802 (Bankr. E.D. Mich. 2005).

The corporate veil should be pierced because no other meaningful remedy exists for Plaintiff. Ignoring a business structure is appropriate where the plaintiff has suffered an unjust lost. *See Servo Kinetics*, 475 F. 3d at 798, 800. Plaintiff's only source of collection on the June 4, 2004 promissory note is to seize 718 Notre Dame, MTG, LLC's bank account, which currently holds approximately $300.00. The fact that Mr. Dietrich was a practicing attorney at the time the parties entered into the Purchase Agreement and executed the June 4 Promissory Note is of no consequence to the propriety of piercing the corporate veil under the circumstances.

The Court concludes that the corporate veil of 718 Notre Dame Mtg, LLC shall be pierced and Mr. Stephens will be personally liable on the June 4, 2008 promissory note. 718 Notre Dame Mtg., LLC was the mere instrumentality of Mr. Stephens, it was used to commit a wrong, specifically to deprive Plaintiff of any remedy upon default of the note, and Plaintiff has suffered an unjust loss as a result.

**VI.　CONCLUSION**

The Court has had the opportunity to fully review the matter. This Court finds that the facts support piercing the corporate veil. It is ORDERED that Mr. Stephens is personally liable on the June 4, 2004 promissory note.

IT IS SO ORDERED.

s/ DENISE PAGE HOOD  
DENISE PAGE HOOD  
UNITED STATES DISTRICT JUDGE

DATED: March 30, 2010

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 30, 2010, by electronic and/or ordinary mail.

S/William F. Lewis  
Case Manager

12